Case number 17-3396, John Doe v. Miami University, et al. Argument not to exceed 15 minutes per side. Mr. Doe, you may excuse yourself. Good morning, Your Honors. I'd like to reserve five minutes for rebuttal. On behalf of Appellant John Doe, I thank you for this time. My name is Eric Rosenberg. This case presents a critical issue for college students like John Doe, who find district courts dismissing Title IX and constitutional claims after universities erroneously suspend or expel them based on false allegations of sexual misconduct. Here, the district court's dismissal of Doe's Title IX due process and equal protection claims under Civil Rule 12 run afoul of two bedrock legal principles. The first is the district court improperly construed Doe's 30-plus pieces of evidence of gender bias against him in violation of decisions such as Twomey, Iqbal, and this court's Logsdon decision. Second, the district court incorrectly found that Miami could exhibit bias in favor of female students who make allegations of sexual misconduct against their male counterparts like Doe without violating Title IX due process or the equal protection clause. The district court violated these bedrock principles in part because the totality of Doe's gender bias evidence plausibly suggests gender bias could have caused his unlawful suspension from Miami. Therefore, reversal of the district court's decision is warranted under this court's decisions as well as the Second Circuit's Doe v. Columbia decision, which held a Title IX complaint cannot be dismissed if minimal plausible inference of discrimination is pled. Applying this standard to the totality of Doe's gender bias evidence is necessary in part because discovery and depositions will likely expose the pretext of Miami's alleged neutral explanations for its employees' discriminatory conduct. But while these allegedly neutral explanations may make persuasive summary judgment arguments, they cannot trump the totality of Doe's gender bias evidence at the motion to dismiss stage. This is partly because this evidence satisfies this court's Cummings decision, which states gender bias can be established via adjudicator statements, university official statements, or a pattern of decision making showing gender bias. Here we have such evidence, which includes the published academic research from the adjudicator defendant Rose Marie Ward, who rejected Doe's appeal. Her research advocates or advances gender bias stereotypes as a foundation for her opinion that females must be protected from sexually aggressive men. This research includes statements such as, in sex, men are viewed as the aggressors, and the woman's role is to set limits as the keeper of consent. Which claim are you arguing at this point? On that case, Your Honor, that would affect Title IX due process and equal protection because under this court's guidelines, a biased decision maker is unconstitutional. So either way. So who is the biased decision maker? Well, the biased adjudicators by the totality of the evidence is the entire panel, including not only Ward but Vaughn and others. If I might, what the district court did here was they looked to, and I believe in your decision in the County of Jackson dissent recently, they used a divide and conquer position. They looked at pieces individually instead of in the totality. In this court, we look at Title VII helps focus our attention on Title IX. So, I mean, a question that your argument raises is, would any person who had ever written on the topic of gender bias be automatically biased and therefore not able to be a decision maker in any of the university sexual assault cases? I understand. In a divide and conquer world, no. In a totality, yes. When you look at the totality of the 30 pieces of evidence, that piece, when, for example, There's a real concern if you're saying that anybody who's ever exhibited an academic interest in the topic of gender studies is automatically biased. Actually, no, I don't think so, Your Honor. Gender studies is one thing. This is a topic about sex, saying men are the aggressors, women are the guardians of consent. If this were a voir dire, they'd be strict for cause, probably. However, this case has more than just that. We have an affidavit from an attorney, Timothy Malloy, who represented 12 different male students in sexual disciplinary proceedings at Miami, and his affidavit states that Miami imposed a presumption of guilt on male students based on gender-based, gender-biased stereotypes. He also noted that Miami is bowing to the pressure from the federal government and other organizations demanding that Miami increase the number of male students it finds responsible for sexual misconduct, and, very importantly, he points out a situation where Miami is a made-up nose of a woman who sexually assaulted a man when he was too incapacitated to consent and did not discipline her. The exact same scenario that is in this case. In this case, Jane got up into the bed of my client, Doe, to initiate sexual contact with him when he was incapacitated, and Miami is acknowledging that he was so incapacitated he can't remember what happened. Did you make that claim in the district court? We did. Where is it in your complaint? That there's selective enforcement because the university didn't go against Jane but did go against John. Everybody's called Doe, so calling anybody Doe is not helpful. Okay. John, I'm sorry. I'll try to use John. So where in your complaint did you say the university engaged in selective enforcement because they didn't prosecute Jane whereas they did prosecute John? We repeatedly in the complaint discussed the fact that Miami was providing preferential treatment to females who alleged sexual misconduct, and we talked about Miami creating a hostile environment for male students, and this is an example of a hostile environment. So you raised it as a hostile environment claim as opposed to a selective enforcement claim? We raised it as a ñ we specifically identified a selective enforcement claim. I don't believe we raised it specifically, but we argued it at the district court on a summary judgment decision, and we pled the facts and we pled a violation of Title IX. I think that would answer your question, or I hope, if not, I'd answer more. But to wrap up, these facts are just a sampling of the 30-plus pieces of evidence of gender bias that Doe put forward, and they present one of the elements of an erroneous outcome claim which pursuant to this court, Doe must show that there was a plausible link between his gender bias and his discipline. The second element of an erroneous outcome claim is satisfied because he presents multiple reasons why Miami erroneously suspended him. For one, he points out that the district court improperly determined the reason for his suspension. Let me step back. What happened was Jane said that she never told John no to sexual contact, but they suspended him because they said that she did tell him to stop. Similarly, if ñ She did say something like that in her statement, though. I'm sorry? She did say something like that in her statement that you sort of omitted from your brief, right? Well, actually, she said that when they were having oral sex, she pushed him off and that he passed out again. There's no way I'm doing that or something like that. I believe that you're correct. Is it in there or not? That ñ I don't know. No, it's not mentioned in your brief. It is in there, isn't it? I think you're paraphrasing it correctly, Your Honor. I am. Well, that sounds like no. Okay. Even if there were ñ The sequence may have been different from the way they found, I understand, but you're just talking about a sequence difference. It's not like there's nothing in there where she says no. She says there's no way you're doing that. Even if there was ñ Miami's made aware of the fact that she's sexually assaulting him under their code and she does not discipline them, so that would be an example of why the result was erroneous, that they disciplined him for a sexual contact initiated by her. Or ñ Wait a minute. In the statement, my understanding of Jane's statement is she says, I kept saying stop and it hurts. John kept telling me to be quiet because I would wake up his roommate. I finally got him to stop doing it. Well, that's the fingering of the vagina, and what he says is he asks if he can finger her vagina. She says, yes, they start to finger the vagina. She says it's not ñ I think if I remember correctly, he says, well, it'll get better if I keep doing it. She said, okay, continue to do that. Then he went to the oral sex. But the point being here is that when she got into bed, Your Honor, she was assaulting him under Miami's code. There's no doubt that he was incapacitated, and they did not discipline her. What they showed was that they ñ throughout the 31 totality pieces of evidence, that they corrupted the scales of justice by showing preferential treatment to a female versus the male. And that's what the district court basically said. They said specifically that it was okay if there was a bias shown in favor of victims against the accused. That would violate both ñ I understand that. Is that ñ Please, yeah. I understand that. But then you were going on to another point. Yes, sir. Which was that the actual holding of the decision maker was different from what was in the statement, right? You were saying that they ñ she didn't say no. And the statement, the conclusion was she did say no, right? You're correct, Your Honor. Your Honor, I am acknowledging that that was the district court's ñ the basis for finding there was an erroneous result. It's one basis of many. I'm advancing other ñ even if the judge were incorrect about that basis, there are at least two other bases as to why the result was incorrect. That's what I'm saying. And your red light is on. So you have reserved five minutes, which you can use as you wish. Thank you. Oh, well. Appreciate it. Thanks. Good morning, Your Honors. May it please the Court, my name is Evan Priestley. I represent the Appalachians in this matter. Your Honors, this case is one of many recent cases involving a student filing suit against a university after there was a sexual encounter between two students. Sometimes these cases are filed by students who claim to have been sexually assaulted where they then allege the university failed to respond appropriately or properly. Other times, like this case, it involves an accused student filing suit claiming the university engaged in some sort of wrongful action by finding that student responsible for violating the university's student code of conduct. In nearly all of these cases, individuals at the university are tasked with making a very difficult decision between competing stories between those two students regarding whether or not the sexual activity was consensual. This, however, is not one of those cases. Here we have a written statement from a female student, which under any plausible reading would support a finding that John Doe engaged in sexual misconduct, thereby violating the university's student code of conduct. In response, rather than offer a competing story, which would support that the sexual activity between he and Jane Roe was in fact consensual, John Doe admits that he has no independent recollection of that evening and that he can dispute nothing in her statement. We submit that faced with this factual scenario, there's no other outcome the university could have reached other than finding John Doe responsible for violating the university's code of conduct. But couldn't they also have found Jane responsible for getting into bed with a clearly drunk John and engaging in sexual conduct with somebody who was so drunk he can't remember what was going on? Not in this case, Your Honor, because if Jane Doe's statement, again, it's very important to read her statement in its totality. If you examine her statement properly, there's no indication or anything from her that she is the one that initiated any sexual activity between her and John Doe. She admits that she got into bed with John Doe, but merely getting into bed with another individual is not the basis for finding that there was a sexual misconduct between those two. In fact, the university's code of conduct describes sexual misconduct, which is some sort of sexual touching or sexual intercourse where there's some sort of penetration. In this circumstance, she says that John Doe started kissing her, John Doe digitally penetrated her, and that John Doe then engaged in oral sex with her after she expressly said no. And I have a quote from that statement, but as the case within the university progressed, didn't the university become aware that John was totally drunk and couldn't remember anything, and that there was kissing that went on between the two individuals, and that Jane continued to kiss him when he was clearly drunk? That's not a fact that the university became aware of? I'm sure they became aware of it at some point. I don't know when they became aware of it. So why not bring a disciplinary action against Jane? Because in this circumstance, Your Honor, what we have here is John Doe starting to kiss her when he was intoxicated. So if Jane is then therefore found responsible for engaging in some sort of sexual misconduct, then anyone who becomes voluntarily intoxicated could essentially use that as a defense against themselves for saying, well, I started kissing this person because they didn't push me off and because they effectively acceded to it, then therefore that person could also be found responsible for engaging in some sort of sexual misconduct. If that were the case, then it would effectively chill any person from coming forward to claim that there was sexual misconduct. In this case, that John Doe started kissing her, John Doe then started digitally penetrating her, and John Doe then engaged in oral sex upon her all against her wishes. So there was no basis for the university to institute or investigate or take any disciplinary action against Jane Doe. So that underlying allegation that John Doe attempts to use to support his Title IX claims as well as his Equal Protection claim fails when Jane Doe's statement is properly examined because there is no basis upon which the university could or would have taken any disciplinary action against her. Counsel, I must say one issue that concerns me is the procedural due process issue, which doesn't really depend on, directly at least, on treating women different from men. It's just did you get enough process. And this is a case that was thrown out on failure to state a claim, right, where there's some allegations that the decision-makers were biased. There's some allegations that there wasn't given enough chance to prepare, or the witnesses for the other side were given more chance to prepare. And I'm just having trouble seeing how that doesn't even state a plausible claim, that you could then have some discovery with respect to it. Now, sure, the guy was drunk and can't remember anything, but that doesn't mean a good lawyer couldn't come up with some arguments about what constitutes consent in the context of activities in this university or cross-examine the witness with a little preparation or challenge the challenge and talk about what exactly the research was undertaken by the decision-makers. Maybe there's some stuff in the research that does show a predilection towards a standard which is stricter than the standard that's supposed to be apportioned. All of that, there's no discovery about anything there. It's just thrown out because of a failure to state a procedural due process claim under Matthews v. Eldridge. Why shouldn't we allow discovery with respect to the procedural due process issue? With regard to the procedural due process claim, that goes to my initial point about the fact that what we have here is a statement from Jane Doe which would support, any plausible reading of that would support a finding that John Doe engaged in sexual misconduct. The fact that John Doe admits that he cannot dispute anything in that statement, it's fatal to his due process claim. Essentially, there's no other process the university could have provided which would have ultimately changed the outcome of this claim. As was discussed in why she didn't report it earlier, you could undermine the credibility of it. I don't know. A good lawyer could do all kinds of things. I'm not that kind of a lawyer, but just to say that it doesn't state a claim seems preemptory. And you're saying, oh, no, this is enough. If the person is drunk, then anything that the victim says is per se true and he can't change it. There's no procedural process protection when he doesn't remember the facts. That can't be the case. Well, it's not as if he had no procedural due process protections, Your Honor. He certainly had some, but you could argue with some force that it wasn't enough. That doesn't mean he'll win on that, but why can't they get discovery on whether it was enough? I mean, all he has to do is state a plausible claim, right? That's correct, Your Honor. He has to state a plausible claim that under a balancing under Matthews v. Eldridge, it might be that more process was required by the Constitution given the stigma that attaches to this. You're not talking about kicking him out for cheating on a test. You're not talking about kicking him out for not showing up for lab. You're talking about something that's going to maybe keep him from going to future schools. I mean, it's... These are serious allegations, Your Honor. There's no dispute about that, but... That means the Matthews v. Eldridge test balances differently. But the Constellation... And we've held that, at least in an unpublished opinion, that it balances differently. So I'm having trouble seeing why... It does balance differently, Your Honor, and one of the primary factors that should be taken into consideration is the fact that John Doe admits that he can dispute nothing that's in Jane Doe's statement. In fact, a recent panel of this Court said in Shoemaker v. City of Howe, by not disputing the charges against him, Shoemaker, the plaintiff in that case, is precluded from mapping a procedural due process claim against the city, even if a due process violation had, in fact, occurred. When you commit a crime so drunk that you don't remember, then you just don't get procedural due process? It's not as if the university is saying that he gets no... What are you saying? It's not as if the university gave him no procedural due process. It gave him the opportunity to come forward... You're just not answering the question. Your response to the earlier question is, if he's so drunk he doesn't remember, he doesn't get due process. And I say, is that what you're saying? And then you say, well, he did get some process. Those are two different arguments. One is he doesn't get due process because he can't remember and he can't win. I'm saying that... The other is... Sorry, Your Honor. I'm saying that that fact is taken into consideration to determine under Matthews v. Eldridge the flexibility of the due process that should be afforded. Unfortunately, due process is a lot of times backward-looking. A lot of times courts often, especially in school disciplinary cases, the amount of due process that should be afforded a lot of times is based upon the ultimate sanction that was imposed. So if there was only a 10-day suspension that was ultimately imposed, the due process level decreases considerably. The sanction is huge. It is. Because it's on his record, right? The sanction is huge because it's on his record. There's no dispute that these are serious allegations and it's a serious sanction, a serious finding. But in this case, he admitted the conduct that was... He admitted he could not dispute the conduct. He said he couldn't dispute it. So in terms of the procedural due process, just to try to be precise about a concern that I have, wasn't one of the individuals in the decision-making level the same person who was essentially the prosecutor? And isn't that a fundamental flaw? I mean, normally we don't think a prosecutor can be a judge in a case. There is no prosecutor in these cases, Your Honor. I mean, the university has... It's a board of inquiry. It's just a panel. There is a chair of that board who is the one who opens the session, who says, you know, this is what you're accused of, describes the process that's going to unfold before them at the hearing. There's no actual prosecutor in any of these cases. What happens is the university receives a complaint. The university acknowledges or notices that complaint to the accused individual. Ultimately, if the accused individual selects to have a hearing, they go to a hearing, and then that's presented to the board. The individual who was the chair of that board was not involved in the prior process before that. She was just the chairperson who would effectively be somewhat analogous to a court of appeals panel. She would have been the chief judge of that panel. But there was no prosecutor that was involved here. I know counsel styles it that way, but there was no one that was actually prosecuting charges against John Doe. It was they received a complaint. They advised him what that complaint was. They brought him to that hearing to ask his side of the story and get his explanation. And his explanation was, I can't dispute anything that she's saying because I was too intoxicated. So there was no actual prosecutor. So there was no dual conflict role between the chair of that hearing panel, between any roles that she may have had. Well, the initiator is, in one respect, always the prosecutor by definition, aren't they? By definition, I guess that's correct, Your Honor. But in this case, universities, it would be impossible for them to separate those functions. They're a singular entity. I'm sorry, not to separate those functions between two people, to separate that from within the university itself. I mean, these were separate people. I mean, it was not the person who received the complaint and did the processing of that complaint was also on the hearing panel. That did not occur. There was no individual who was on the actual hearing panel who was a prosecutor or someone who noticed him. Who's the person they refer to? Ms. Vaughn. She was the chair of the hearing panel. To what extent was she the person who brought the claim? The person who brought the claim was Jane Doe. To what extent was she involved in bringing the claim? None that I'm aware of, Your Honor. In that regard, was Jane Doe the person that brought the complaint or was it initiated by some girlfriends of hers? Initially, she discussed it and she mentioned it to the RA of their dormitory. The RA of the dormitory, she initially made the comments to her about it. The RA of the dormitory felt an obligation and initially reported it. So the allegations were initially brought to the university's attention through the RA. Or did the RA just overhear or become privy to those conversations? Did the two girlfriends actually go into the RA's office where they usually live in the dorm and make this complaint? I don't know the exact sequence of the events for that, Your Honor. I don't believe that it's in the record anywhere. I know that the RA did also have a conversation with John Doe prior to those allegations being brought to the university's attention. So I'm not sure exactly how it came to the RA's attention, but it was either through Jane Doe herself or through Jane Doe with one of her friends to the RA. The RA was then the one that made the complaint initially, but then Jane Doe obviously followed through and submitted her statement, which supported the finding that John Doe had violated the university's code of conduct. With regard to a few of the other points on the due process claim, Your Honors, John Doe's two primary contentions are that he didn't receive Jane Doe's statement until 24 hours in advance of the hearing and that he only had 48 hours to prepare for the hearing. However, as the district court noted, when the actual timeline of events is set forth, those two allegations don't support a due process violation. The sexual conduct at issue here took place the evening of September 13th to the early morning hours of September 14th. Paragraph 5 of this complaint, John Doe admits that the following morning, when he and Jane Doe awoke, that she told him that he did not stop when she requested that he not perform oral sex. Two days later, John Doe was informed by the university that he had received an allegation of sexual assault from a female student that he had engaged in sexual misconduct with a female student on September 14th. That correspondence also identified the section of the student code of conduct that applied to those allegations. Approximately 10 days after the initial events, September 24th, John Doe attended a procedural review meeting. The procedural review meeting is designed to give an accused student the opportunity to sit down with a member of the university's administration, separate from anybody who was going to be on the hearing panel, who was involved in the disciplinary process, so the accused student can have an opportunity to sit down, discuss anything about the procedure of the hearing so they know exactly what it is that's going to happen going forward, what a hearing would look like, what types of things they can question about, whether or not they can have counsel present with them. That took place on September 24th. At this review hearing, John Doe was there that he selected to have his case heard by a hearing panel. That was ultimately scheduled approximately two weeks later, on October 7th. At that hearing, John Doe was present with counsel. As is the case with most university disciplinary hearing panels nationwide, counsel are not allowed to participate, but they're there in an advisory role and can advise those students throughout the entirety of the hearing process. Your red light is on, so if there's a key point you want us to have on this, if you would make that in a sentence or two. I'll wrap up very quickly, Your Honor. At that hearing, he was permitted to give an opening, closing statement to the panel, ask questions of Jane Doe. After that hearing, where he was ultimately found responsible, he was then given multiple levels of appeal. So he had notice of the allegations against him, adequate time to prepare, and multiple layers of process at the university. There were many claims that were raised in John's complaint. One was a Title IX erroneous outcome claim. So in a couple of sentences, why shouldn't we allow that claim to go forward? Specifically because there's no facts upon which it could be found that there was an erroneous outcome. And that relies entirely on the fact that John doesn't remember what happened. Well, it relies primarily on Jane Doe's statement, which certainly a plausible reading would find that he engaged in sexual misconduct. But the fact that he admits that he can dispute nothing in that statement, I think there's no other outcome the university could have reached other than finding that he was responsible for sexual misconduct. Thank you. Thank you. Thank you, Your Honors. Miami seems to want to have its cake and eat it too here, in the context of there's some things that were incorrect, actually, what they're saying. If you look at the reason why Jane, she was saying, couldn't be disciplined. In fact, Jane's own statement said she got into bed, quoting, assuming we would make out again. That was her intent, to get into bed, to make out with Doe. The policy at Miami does not require penetration, non-consensual sexual contact can include kissing of an incapacitated person. And they define no consent as being someone who is unable to control their own conduct or is substantially impaired, and they're acknowledging that clearly he's impaired because he has no recollection of what happened. With regard to Judge, the questions about procedural due process, here, Doe's procedural due process claim cannot be dismissed because the totality of the gender bias evidence showed how he was denied an opportunity to present his side of a story before an unbiased decision maker, as this Court has required in the. Can I get sort of one, two, three, what, you know, when we do Matthews v. Eldridge analysis, the Supreme Court says you're not supposed to be deciding the particular case before you, you're supposed to be deciding procedures that are required for particular categories of cases. So if we have a case where somebody, where we're combining the harm to the plaintiff of being kicked out of school for a year with a huge, ugly stigma that will go with him for most of his life, in that situation, what kinds of procedures does the university have to provide? We have this unpublished decision that sort of lays out in general terms what those procedures are basically in that situation, all right? Which categories of procedures that can be described in that categorical way was he denied here that procedural due process, once we balance it, would require? And part of it goes to Judge Moore's question, but it's the fact that you have a biased decision maker who is polluting the process by, for example, prohibiting Doe from accessing the audio recordings of the disciplinary hearing so he can use it for the appeal. Wait a minute. There's no access to what? The recordings. There was a recording at the disciplinary proceeding. He wasn't allowed access to that. He wasn't, to the disciplinary proceeding? Recording of the hearing. His own hearing. His own hearing. He was not, so when he does the appeal, he can't listen to the audio. The appeal, he didn't have access to the record. Correct. He was given. Place that below on appeal, no access to the hearing record. I did. We did. We talked about. So you could say, well, under a match who's balancing, when you have an appeal, you should have access to the record. Assuming you have the right to the appeal in the first place. What else? Judge Moore, you were asking about kind of whether someone can, you know, the prosecutor, the judge, the jury had. Your opponent says that Vaughn wasn't the prosecutor. Well, she did. She was. And we raised this issue that she wasn't the one involved in the investigation. She did serve on the panel. And the Haney case says it's not necessarily a due process violation if they wear more than one hat. But we cited the Brewer case, which is a Fifth Circuit case that talks about that. Whether she was the prosecutor. In what sense was she the prosecutor? Well, for example, at the hearing, she said, I bet you do this all the time. No, no. The separation of functions thing is the idea that she brought the indictment or she made the charge. She did. She's the Title IX coordinator. There's a hearing, and she's the one asking all the questions. Well, but that isn't the theory, isn't that you have a hearing with an active participant? The theory is that you've already decided it before you go in because you brought the charge. Did she bring the charge? She's in charge of bringing the charge. Yes. So you're saying the record will show that she brought the charge. Whether she was active during the hearing, that's a different issue. She's a Title IX coordinator who signs off on the documents. And I don't want to say she – I'm not going to sit here today and say she made the charge. But I believe the charge letter has her signature on it. Okay. So is your position then that the Title IX coordinator should never be on the hearing panel? No. But her biased role in the way she – you know, she was quoted in the Dayton paper, for example. So that's the wrong procedure. She's tainting the process with her gender bias. That's different than being the prosecutor. I understand that, Your Honor. But it goes to the question of what procedural things occurred during this hearing that would have caused – and the bias is what caused these various procedural – because what – You could say pre-decision is not constitutionally allowed in this context. But then you'd have to identify what shows a pre-decision. One would be that she brought the charge. But that's looking weaker and weaker the more you talk about it. The other would be that she showed pre-decision when she says things like, I bet you've done this many times. Is that right? Is she the one who said that? Yes, she's the one who said that. So those are two separate ways in which you could argue that she was pre-disposed. And you're not supposed to have a pre-disposed decision-maker is the idea. If you do, then you're either violating due process, equal protection, or Title IX. You can't have a biased decision-maker and violate none of the three, and that's what the district court basically says. Are you familiar with the cases where the Supreme Court has upheld, for instance, an optometry board that brings a claim against someone who is doing malpractice, and then a month later the same board sits in judgment and they said that was okay? I am not familiar with that case, but I don't think they had the biased decision-maker, like in this case where you had Ward saying men are the aggressors and women are the guardians of consent. That's a different basis for this. And you're saying Ward as opposed to Vaughn. Ward, yes. Ward was the, and my time's up, sorry. But Ward was the person who decided the appeal. She was the one who had the publication that said men are the aggressors in sex and women are the guardians of consent. That's a biased decision-maker. Thank you both for your argument. The case will be submitted.